UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

WELLS FARGO BANK N.A., as Trustee for the   :
Certificateholders of Sovereign Commercial Mortgage   :
Securities Trust, 2007-C1, Commercial Mortgage Pass-   :
Through Certificates, Series 2007-C1, acting by and   :
through WATERSTONE ASSET MANAGEMENT,   :
LLC, as Sub-Special Servicer,   :

                    Plaintiff,   :   Case Nos.  13-CV-1222 (NRB)
                                              :                            13-CV-4313 (NRB)

      -against-   :

                                            :

SOVEREIGN BANK, N.A.,   :

                                          :

                    Defendant.   :

------------------------------------------------------------------------x

 

**MEMORANDUM OF LAW OF DEFENDANT/COUNTER-CLAIMANT
SANTANDER BANK, N.A. IN SUPPORT OF ITS MOTION TO DISMISS AND/OR
FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT**

 

**HAHN & HESSEN LLP**
Robert J. Malatak
Annie Power
488 Madison Avenue
New York, New York 10022
(212) 478-7200
*Attorneys for Defendant/Counter-Claimant
Santander Bank, N.A.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 3

ARGUMENT ....................................................................................................... 3

I.  THE RELEVANT STANDARDS OF REVIEW ...................................... 3

    A.  The Standard On A Motion To Dismiss Pursuant To Fed. R. Civ.
        P. 12(b)(6) ........................................................................................ 3

    B.  The Standard On A Motion For Judgment On  The Pleadings
        Pursuant To Fed. R. Civ. P. 12(c) ................................................... 4

    C.  The Standard Under Fed. R. Civ. P. 12(d) ....................................... 4

    D.  The Standard On A Motion For Summary Judgment Pursuant To
        Fed. R. Civ. P. 56 ............................................................................ 5

II.  GRANTING JUDGMENT IN BOTH ACTIONS IS APPROPRIATE ................. 6

    A.  The MLPA And PSA Identified The Second Loans By Way Of The
        Inclusion Of A Certain Footnote ..................................................... 7

    B.  Alternatively, Reformation Of The MLPA And PSA Is Appropriate
        Under The Circumstances ............................................................... 8

    C.  Alternatively, Wells Waived Its Rights (If Any) To Enforce
        Santander's Representations And Warranties Given Santander's
        Disclosure Of The Second Loans To Wells, And Wells' Failure To
        Preserve Rights Regarding The Same ........................................... 11

III.  THE FIVE LOANS ACTION SHOULD BE DISMISSED ON
     STATUTE OF LIMITATIONS GROUNDS ....................................... 13

IV.  CLAIMS 6 THROUGH 11 OF THE FIVE LOANS ACTION
     RELATING TO REP. 10 ARE INADEQUATELY PLED AND
     SHOULD BE DISMISSED ................................................................ 15

V.  CLAIMS 5, 10, AND 11 OF THE FIVE LOANS ACTION RELATING
     TO REP. 18 AND REP. 10 WITH RESPECT TO THE BRADENTON
     MEZZANINE DEBT SHOULD BE DISMISSED .............................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Sec. Corp. v. DB Structured Products, Inc.*,
   40 Misc. 3d 562, 965 N.Y.S.2d 844 (Sup. Ct., N.Y. Cty. 2013) ....................................15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 3

*Bronx Entm't, LLC v. St. Paul's Mercury Ins. Co.*,
   265 F. Supp. 2d 359 (S.D.N.Y. 2003)........................................................... 6

*Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret*,
   598 F.2d 1264 (2d Cir. 1979) ...................................................................... 6

*CBS Inc. v. Ziff-Davis Publishing Co.*,
   75 N.Y.2d 496, 554 N.Y.S.2d 449 (1990) .............................................12-13

*Celotex Corp. v. Cartrett*,
   477 U.S. 317 (1986)........................................................................................... 5

*Colello v. Collello*,
   9 A.D.3d 855, 780 N.Y.S.2d 450 (4th Dep't 2004)...............................13-14

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ............................................................................ 3

*EGW Temporaries, Inc. v. RLI Ins. Co.*,
   83 A.D.3d 1481, 919 N.Y.S.2d 752 (4th Dep't 2011) ................................ 9

*Ely-Cruikshank Co., Inc. v. Bank of Montreal*,
   81 N.Y.2d 399, 599 N.Y.S.2d 501 (1993) ................................................13

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992) .......................................................................11-12

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
   18 N.Y.3d 765, 944 N.Y.S.2d 742 (2012) ................................................15

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995)................................................................................. 3

*Jessamy v. City of New Rochelle*,
   292 F. Supp. 2d 498 (S.D.N.Y. 2003)........................................................... 4

*Lana & Edward's Realty Corp. v. Kaltz/Weinstein P'ship,*
No.: 27958/08, 2010 N.Y. Misc. LEXIS 548
(Sup. Ct., Kings Cty. Mar. 17, 2010)...................................................................14

*Manns v. Norstar Bldg. Corp.,*
4 A.D.3d 799, 771 N.Y.S.2d 438 (4th Dep't 2004).......................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)............................................................................................5

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*
500 F.3d 171 (2d Cir. 2007)............................................................................11

*Munshi v. N.Y. Univ.,*
528 F. Supp. 1088 (S.D.N.Y. 1981)................................................................4

*Nash v. Kornblum,*
12 N.Y.2d 42, 234 N.Y.S.2d 697 (1962).........................................................10

*Nat'l Urban Ventures, Inc. v. City of Niagara Falls,*
78 A.D.3d 1525, 910 N.Y.S.2d 615 (4th Dep't 2010)...................................13

*Ne. Shares Corp. v. Int'l Ins. Co.,*
240 A.D. 80, 269 N.Y.S. 351 (1st Dep't 1934).........................................9, 10

*Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v.
Nomura Credit & Capital, Inc.,*
2013 N.Y. Misc. LEXIS 2001, 2013 N.Y. Slip Op 50743 (U)
(Sup. Ct., N.Y. Cty. May 10, 2013)................................................................15

*Papasan v. Allain,*
478 U.S. 265 (1986)...........................................................................................3

*Rogath v. Siebenmann,*
129 F.3d 261 (2d Cir. 1997)............................................................................11

*Rothman v. Gregor,*
220 F.3d 81 (2d Cir. 2000)..............................................................................18

*Sandquist & Snow, Inc. v. P.H. Kellog,*
133 So. 65 (Fla. 1931)...................................................................................18-19

*Sira v. Morton,*
380 F.3d 57 (2d Cir. 2004)...............................................................................4

*Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp.,*
02 Civ. 3232, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003)....................13-14

*T&N PLC v. Fred S. James & Co. of N.Y., Inc.*,
  29 F.3d 57 (2d Cir. 1994) ................................................................13

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
  11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895 (S.D.N.Y. July 25, 2012) ..................6, 16

*U.S. Bank, N.A. v. Dexia Real Estate Capital Markets*,
  12 Civ. 9412, 2013 U.S. Dist. LEXIS 80544 (S.D.N.Y. June 6, 2013) ..........................15

*Vasilakos v. Gouvis*,
  296 A.D.2d 668, 745 N.Y.S.2d 132 (3d Dep't 2002) ....................................................10

*Wright v. Monroe Cmty. Hosp.*,
  493 Fed. Appx. 233 (2d Cir. 2012) ................................................................. 4

STATUTES

Fed. R. Civ. P. 12 ................................................................................3, 4, 6

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 3-4

Fed. R. Civ. P. 12(c) ................................................................................. 4

Fed. R. Civ. P. 12(d) ................................................................................4-5

Fed. R. Civ. P. 56 ................................................................................1, 4, 5

Fed. R. Civ. P. 56(e) ................................................................................. 5

Fed. R. Evid. 201(b) ................................................................................18

OTHER AUTHORITIES

1 MOORE'S FEDERAL RULES PAMPHLET ............................................................ 4

16 N.Y. Juris.2d, Cancellation of Instruments, § 64 (2013) ................................................ 9

N.Y.C.P.L.R. § 213 (McKinney 2013) ................................................................13

Talcott J. Franklin & Thomas F. Nealon III, Mortgage and Asset Backed Securities
  Litigation Handbook (West 2012) ................................................................. 7

## PRELIMINARY STATEMENT

Defendant/Counter-Claimant Santander Bank, N.A. ("Santander")[1] respectfully submits this memorandum of law, pursuant to Fed. R. Civ. P. 12(b)(6), 12(c), 12(d), and 56, for an order (1) dismissing the claims asserted by Plaintiff Wells Fargo Bank N.A. ("Wells"), as Trustee for the Certificateholders of Sovereign Commercial Mortgage Securities Trust, 2007-C1 ("Certificateholders"), and/or (2) directing the entry of judgment on the pleadings, and/or (3) directing the entry of summary judgment in Santander's favor in the Enco Loan Action (13-CV-1222) and Five Loans Action (13-CV-4313) (together, the "Actions").[2]

The Actions both arise out of a commercial mortgage-backed securities transaction ("CMBS"), specifically, Santander's sale of approximately $1 billion in commercial mortgage loans (the "Mortgage Loans") to Morgan Stanley Capital I, Inc. ("Morgan Stanley"), as the Purchaser/Depositor, pursuant to the Mortgage Loan Purchase Agreement, dated as of June 8, 2007 (the "MLPA"). In connection therewith, the Trust was created, and Morgan Stanley subsequently sold and assigned the Mortgage Loans to Wells, as Trustee, pursuant to the Pooling and Servicing Agreement, dated as of June 1, 2007 (the "PSA"). Wells complains in the Actions that Santander supposedly breached a certain representation and warranty ("Rep. 18") in the MLPA and PSA because it failed to identify certain second mortgage liens (the "Second Loans") on properties that secured certain of the Mortgage Loans that Wells purchased. Nothing could be further from the

---

[1]   Effective October 17, 2013, Sovereign Bank, N.A. changed its legal name to Santander Bank, N.A.

[2]   Capitalized terms undefined herein shall have the same meaning ascribed to them in the accompanying (a) Declaration of James B. McClernan, sworn to on October 25, 2013 (the "McClernan Decl."), or (b) Declaration of Robert J. Malatak, Esq., sworn to on October 25, 2013 (the "Malatak Decl.").

truth.  As well known, *then and now*, to Wells, and the Certificateholders, whose interests Wells represents, the Second Loans were fully disclosed.

Although the underlying transaction is itself quite complicated, the issues before this Court are simple and straightforward and can (and should) be swiftly and easily resolved in Santander's favor.  Indeed, in all of the unambiguous transaction documents that were contemporaneously negotiated, drafted, compiled, executed, and exchanged, Santander disclosed the existence of the Second Loans that Wells now complains were not disclosed. Even if the Court concludes (which it should not) that the Second Loans were not adequately disclosed, either (1) this Court should reform the MLPA and PSA to so-reflect the Second Loans because their omission was clearly due to a mutual mistake and/or scrivener's or clerical error, or (2) this Court should find that Wells waived any right it had to assert a related breach of representation and warranty claim because it closed the transaction with full knowledge of the Second Loans, as disclosed by Santander, and failed to preserve the issue (not that there was one).

In addition to the fact that there was indeed full disclosure, it is crystal clear that Wells did not commence the Five Loans Action until June 20, 2013, which is more than six (6) years from the date that the MLPA and PSA were executed -- June 8, 2007 and June 1, 2007, respectively.  Accordingly, the Five Loans Action is untimely and should be dismissed.  Additionally, Wells has too thinly alleged its otherwise implausible claims that Santander breached a certain representation and warranty (Rep. 10) by failing to originate the Five First Loans using legal, proper, and prudent means and otherwise failing to meet customary industry standards.  Finally, Wells also complains that one of the Second Loans, the Bradenton Mezzanine Debt, was not disclosed, but not only is that untrue, but that debt

was not even a lien on the subject property (a fact that Wells acknowledged in a related foreclosure action), and, thus, cannot form a basis for Wells' breach claims.

Accordingly, and for all the reasons set forth below and in the accompanying McClernan Declaration and Malatak Declaration, Santander's motion should be granted in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

For a complete statement of the relevant facts and procedural history, the Court is respectfully referred to the accompanying McClernan Declaration and Malatak Declaration. For convenience and brevity, relevant facts are incorporated in the argument section below.

## ARGUMENT

### I.   THE RELEVANT STANDARDS OF REVIEW

#### A.   The Standard On A Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)

A complaint can only survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  While all factual allegations are accepted as true when deciding a motion to dismiss, courts need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).[3]  Finally, a motion to

---

[3]   When deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, this Court may properly consider any documents incorporated by reference, attached as an exhibit, and/or that are otherwise integral to a plaintiff's complaint. *See, e.g., Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  Further, this Court may also consider all relevant "documents [that a plaintiff] had either in its possession or had actual knowledge of and upon which [it] relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

dismiss for failure to meet the applicable statute of limitations is properly made under Fed. R. Civ. P. 12(b)(6).  *See Munshi v. N.Y. Univ.*, 528 F. Supp. 1088, 1089 (S.D.N.Y. 1981).

The foregoing standard is relevant to that prong of Santander's motion which seeks dismissal of Wells' Complaint filed in the Five Loans Action because this motion is made pre-answer (Malatak Decl., ¶ 13).

### B.    The Standard On A Motion For Judgment On <br> The Pleadings Pursuant To Fed. R. Civ. P. 12(c)

"A motion for judgment on the pleadings under Rule 12(c) is essentially identical to a motion under Rule 12(b)(6) in that it tests the legal sufficiency of the pleadings", the only difference being the timing of the two motions, as a motion for judgment on the pleadings is made only *after* the pleadings are closed.  1 MOORE'S FEDERAL RULES PAMPHLET § 12.5 (Matthew Bender) (2013).  *See also Wright v. Monroe Cmty. Hosp.*, 493 Fed. Appx. 233, 234 (2d Cir. 2012).  The foregoing standard is relevant to that prong of Santander's motion seeking dismissal of Wells' Complaint filed in the Enco Loan Action, wherein the pleadings are closed (Malatak Decl., ¶¶ 1-7, 13).

### C.    The Standard Under Fed. R. Civ. P. 12(d)

Fed. R. Civ. P. 12(d) states, in relevant part, that where "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Indeed, where a court considers documents and/or evidence that was not attached to, incorporated by reference, but are otherwise integral to the complaint on a 12(b)(6) or 12(c) motion, conversion is appropriate.  *Sira v. Morton*, 380 F.3d 57, 67-68 (2d Cir. 2004); *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 503-04 (S.D.N.Y. 2003).  In the event that this Court concludes that certain evidence proffered by Santander on this motion goes beyond the

parties' pleadings filed in the Actions, then Santander respectfully requests that this Court convert Santander's motion to one for summary judgment under Fed. R. Civ. P. 56.[4]

### D.    The Standard On A Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56

Fed. R. Civ. P. 56 provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Fed. R. Civ. P. 56(e), and if that party fails to address assertions of fact, the court may "consider the facts undisputed for purposes of the motion [and may] grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).[5]

---

[4]    Wells cannot complain that it did not have the requisite notice that Santander would seek (as necessary) such conversion, or that such conversion might possibly occur, given the plain language of Santander's motion papers, as well as the fact that Santander expressly stated that the instant motion would be made pursuant to, *inter alia*, Fed. R. Civ. P. 12(d), in its August 20, 2013 pre-motion conference request letter, and during the related conference.

[5]    All of the documents that Santander proffers in support of its within motion are properly before this Court.

Here, there is no question that Santander has met its burden under Fed. R. Civ. P. 12 and 56 and, accordingly, its motion should be granted in its entirety.[6]

## II.   GRANTING JUDGMENT IN BOTH ACTIONS IS APPROPRIATE

There is no question, and Wells cannot reasonably dispute (let alone raise a material issue of fact), that Wells and its constituents, the Certificateholders, had actual knowledge of each one of the Second Loans since, *inter alia*, Santander explicitly and unequivocally disclosed same in the MLPA, PSA, and numerous related, and contemporaneously negotiated, drafted, compiled, executed, and exchanged transaction documents, by and between Santander, Morgan Stanley, and Wells (McClernan Decl., *generally*).[7] Consequently, Santander did not breach its Rep. 18, which reads, in pertinent part, as follows:

> ... No Mortgaged Property secures any mortgage loan not represented on the Mortgage Loan Schedule; ... no Mortgage Loan is secured by property that secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loans Schedule.

McClernan Decl., ¶ 11.

---

[6]   Recognizing that this motion deals with multiple actions and seeks various relief based under several statutory provisions, the Court is respectfully referred to the chart included in the Malatak Decl. (*see* ¶ 13), which identifies the applicable statutory bases relative to the various relief sought by Santander.

[7]   Pursuant to the PSA, Morgan Stanley did "assign, sell, transfer and convey to [Wells], in trust, without recourse, for the benefit of the Certificateholders and [Wells] all of the right, title and interest of Morgan Stanley ... in, to and under (i) the Mortgage Loans identified on the Mortgage Loan Schedule, [and] (ii) [certain sections, including the representations and warranties section,] of the [MLPA] ...". *See* McClernan Decl., Ex. F, § 2.01. Given this absolute assignment, Wells stepped into the shoes of Morgan Stanley (as Depositor) and is charged with Morgan Stanley's knowledge. *See Torchlight Loan Servs., LLC v. Column Fin., Inc.,* 11 Civ. 7426, 2012 U.S. Dist. LEXIS 105895, at *5 (S.D.N.Y. July 25, 2012) ("Under the PSA, the trustee is the successor-in-interest to the rights of [the Depositor] under the MLPA. In other words, the trustee steps into the shoes of [the Depositor] with respect to any representations and warranties made by [the Seller] under the MLPA ..."); *see also Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret,* 598 F.2d 1264, 1266 (2d Cir. 1979) ("[A]n assignee of a claim takes it with whatever limitations it had in the hands of the assignor."); *Bronx Entm't, LLC v. St. Paul's Mercury Ins. Co.,* 265 F. Supp. 2d 359, 361 (S.D.N.Y. 2003) (assignee of insurance policy had no claim against insurer where terms of policy limited recovery since "[i]t is clear that an assignee steps into the shows of the assignor and gains only that to which the assignor is entitled ... An assignee is in no better or worse position than the assignor.") (internal citations omitted). This *charged* knowledge is in addition to the knowledge that Wells and the Certificateholders had in their own right, which is fully discussed in the McClernan Decl.

Accordingly, and as further discussed below, an order should be entered granting Santander judgment in both the Enco Loan Action and Five Loans Action, and otherwise dismissing the Five Loans Action in its entirety.

### A.     The MLPA And PSA Identified The Second Loans By Way Of The Inclusion Of A Certain Footnote

"[T]he core documents -- those that set forth the principal terms of a CMBS transaction – are only three: an offering document; a pooling and servicing agreement; and a mortgage loan purchasing agreement."   Talcott J. Franklin & Thomas F. Nealon III, Mortgage and Asset Backed Securities Litigation Handbook, § 1:47, pp. 1-72 (West 2012).[8] Each of these documents was negotiated, drafted, compiled, executed, and exchanged in the instant transaction, and all reference the Second Loans.   To be sure, the Mortgage Loan Schedule attached to the MLPA and PSA identifies the two hundred and sixty four (264) Mortgage Loans that were sold into the Trust in connection with the transaction at issue, and (as more fully in the McClernan Declaration and below) is the same loan schedule which is attached to the Confidential Offering Memorandum, dated June 8, 2007 (the "COM") (McClernan Decl., ¶¶ 4-6).

The copy of the Mortgage Loan Schedule that was attached to the COM includes eighteen (18) footnote numbers associated with various columns containing loan-related information (*id.* at ¶ 5).   The text of each of these footnotes (the "Footnote Descriptions") is set forth in the six (6) pages immediately following the schedule in the COM, and also appears in the Preliminary Confidential Offering Memorandum, dated May 24, 2007 (the "Pre-COM") (*id.*).   Most notably, the text for footnote number 5 ("Footnote Five"),

---

[8]     It should be noted that "[t]he prospectus, which is also referred to as the offering memorandum, incorporates information from [among other things, the mortgage loan purchase agreement and the pooling and servicing agreement] and the loans to enable a prospective investor to evaluate the investment in the certificates that are being offered."   Franklin & Nealon, *supra* § 1:12, pp. 1-26.

specifically identifies the Second Loans (*id.* at ¶ 6).  The MLPA and PSA also contain a copy of the Mortgage Loan Schedule, which includes many of the same eighteen (18) footnote numbers, including Footnote 5 (*id.* at ¶¶ 14, 15, 17).  Although the written text that corresponds to Footnote 5 does not expressly appear in the MLPA or PSA, Wells (and the Certificateholders) knew exactly what the corresponding text of Footnote 5 contained -- a full and complete written disclosure of the Second Loans (*id., generally*).

Based upon the foregoing, because disclosure of the Second Loans was made in the MLPA and PSA by the inclusion of Footnote 5, an order and judgment dismissing Wells' claims should be entered in Santander's favor.

### B.   Alternatively, Reformation Of The MLPA And PSA Is Appropriate Under The Circumstances

Even if this Court determines (which it should not) that the inclusion of Footnote 5 in the copies of the Mortgage Loan Schedule attached to the MLPA and PSA was itself not adequate, there is no question that the failure to include the Footnote Descriptions (including the description for Footnote 5, which identified the Second Loans) was due to the parties' mutual mistake and/or a scrivener's or clerical error.

As detailed throughout the McClernan Declaration, as part of the securitization process, Santander identified the Second Loans and then disclosed them to Wells, and, thus, both Santander and Wells were fully aware of the Second Loans and accounted for them while negotiating and reaching their final agreement as reflected in the COM, MLPA, and PSA (McClernan Decl., *generally*).  However, due to either a mutual mistake and/or a scrivener's or clerical error, the footnote numbers were included in the MLPA and PSA, but the corresponding text of the footnotes was not (*id.* at ¶ 25).  The inclusion of the footnote numbers would cause any reasonable person to conclude that the parties had intended that the corresponding text would also be included.  The documentary evidence establishing

either a mutual mistake and/or a scrivener's or clerical error in failing to include the text of the Footnotes is beyond clear and convincing, and downright conclusive, and includes the numerous documents that were contemporaneously negotiated, drafted, compiled, executed, and exchanged in connection with the subject transaction -- *all of which make reference to the Second Loans* -- including, without limitation, the (1) Pre-COM; (2) COM; (3) COM Disk; (4) Mortgage Loan Schedule; (5) MLPA; (6) PSA; (7) Deloitte Letters; (8) Indemnification Agreement; and (9) Santander's Officer Certification (McClernan Decl., *generally*).   Notably, even Wells could not deny (and, in fact, admitted) that the COM specifically references the Second Loans.  *See* Wells' Answer To Amended Counterclaims, dated August 23, 1013, in the Enco Action (ECF # 27), ¶¶ 9, 10, 13.

This Court has the equitable power to reform a contract when, for example, the alleged error resulted from a mutual mistake and/or a scrivener's error.  16 N.Y. Juris.2d, Cancellation of Instruments, § 64 (2013).  *As for a mutual mistake*, it "exists where the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement."  *EGW Temporaries, Inc. v. RLI Ins. Co.*, 83 A.D.3d 1481, 1481-82, 919 N.Y.S.2d 752, 753 (4th Dep't 2011) (internal citations and quotations omitted).  "When an error is not in the agreement itself, but in the instrument that embodies the agreement, equity will interfere to compel the parties to execute the agreement which they have actually made, rather than enforce the instrument in its mistaken form."  *Id.* (internal citations and quotations omitted).  *See also Ne. Shares Corp. v. Int'l Ins. Co.*, 240 A.D. 80, 82, 269 N.Y.S. 351, 354 (1st Dep't 1934) (finding that "[i]t is impossible to conceive that the misdescription [of the property in the insurance policy] could have been other than the result of a mutual mistake."), *aff'd* 264 N.Y. 574 (1934).  *As for a scrivener's error*, "[w]here there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to

writing, such a mistake of the scrivener, or of either party, no matter how it occurred, may be corrected." *Vasilakos v. Gouvis*, 296 A.D.2d 668, 669, 745 N.Y.S.2d 132, 133 (3d Dep't 2002) (internal citations and quotations omitted). "Under such circumstances, reformation of the contract is appropriate to correct the errors so that it will accurately reflect the intentions of the parties." *Id. See also Nash v. Kornblum*, 12 N.Y.2d 42, 47, 234 N.Y.S.2d 697, 700-01 (1962) (finding scrivener's error, and reforming contract where plaintiff's agent erroneously typed the wrong ground measure and, thus, the contract did not accurately reflect the parties' understanding of the area to be fenced).

Here, all of the key documents that were contemporaneously negotiated, drafted, compiled, executed, and exchanged by and among the parties clearly and unambiguously identified the Second Loans, and, thus, assuming Wells meant to act in good faith, it is impossible to conceive that the omission of the Footnote Descriptions in the MLPA and/or PSA could have been other than the result of a mutual mistake and/or a scrivener's or clerical error.[9] Santander recognizes that "[r]eformation is not designed for the purpose of remaking the contract agreed upon but, rather, solely for the purpose of stating correctly a mutual mistake shared by both parties to the contract; in other words, it provides an equitable remedy for use when it clearly and convincingly appears that the contract, as written, does not embody the true agreement as mutually intended." *See Nash*, 12 N.Y.2d at 46. Under the circumstances here, reforming the MLPA and PSA to merely include the text of footnotes -- the numbers for which are already included in the respective schedules and for which appear in other versions of the same schedule, included in other core transaction documents -- is entirely consistent with the intended purpose of reformation. Thus, this

---

[9]   *See Ne. Shares Corp.*, 240 A.D. at 83, 269 N.Y.S. at 355 ("[Fraud] is not ordinarily inferred where the evidence is susceptible of an interpretation of innocence. Assuming, therefore, that the defendant meant to act in good faith ..., then it also labored under a mistake.")

Court should exercise its equitable powers to reform the MLPA and PSA so as to include

the Footnote Descriptions and, particularly, the description for Footnote 5, which references

the Second Loans.

      **C.      Alternatively, Wells Waived Its Rights (If Any) To Enforce Santander's Representations And Warranties Given Santander's Disclosure Of The Second Loans To Wells, And Wells' Failure To Preserve Rights Regarding The Same**

The Second Circuit Court of Appeals, in *Merrill Lynch & Co. Inc. v. Allegheny Energy,*

*Inc.*, clearly articulated New York law regarding express warranties as follows:

> [T]he general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue. *This rule is subject to an important condition.* The Plaintiff must show that it believed that it was purchasing seller's promise regarding the truth of the warranted facts. We have held that where the seller has disclosed at the outset facts that would constitute a breach of warranty, that is to say, the inaccuracy of certain warranties, and the buyer closes with full knowledge and acceptance of those inaccuracies, the buyer cannot later be said to believe that he was purchasing the seller's promise respecting the truth of the warranties.

500 F.3d 171, 186 (2d Cir. 2007) (internal citations omitted) (emphasis added). Consistent

with the foregoing, the Second Circuit has also stated that:

> [w]here a buyer closes on a contract in the full knowledge and acceptance of facts *disclosed by the seller* which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach. In that situation, unless the buyer expressly preserves his rights under the warranties …, we think the buyer has waived the breach.

*Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997) (quoting, *Galli v. Metz*, 973 F.2d 145,

151 (2d Cir. 1992)) (emphasis in original). "The buyer may preserve his right by expressly

stating that disputes regarding the accuracy of the seller's warranties are unresolved, and

that by signing the agreement the buyer does not waive any rights to enforce the terms of the

agreement." *Id.* at 264-65 (citing *Galli*, 973 F.2d at 150). *See also Galli*, 973 F.3d at 150-51

(citing *CBS Inc. v. Ziff-Davis Publishing Co.*, 75 N.Y.2d 496, 554 N.Y.S.2d 449 (1990) (after noting that in the *Ziff-Davis* case, "CBS agreed to close, but expressly stated that the dispute over the accuracy of the financial statements continued and that by closing, CBS did not waive any rights under the agreement", the Second Circuit concluded that "unless the buyer expressly preserves his rights under the warranties (as did CBS in *Ziff-Davis*), we think the buyer has waived the breach.")).

As previously discussed, it was Santander that fully disclosed the existence of the Second Loans to Wells prior to the execution of the MLPA and PSA (McClernan Decl., *generally*). Thereafter, Wells, with the "full knowledge and acceptance" of the Second Loans, executed the agreements, and *did not* preserve, in the precise manner required in the *Galli* case, any dispute with respect to the existence of the Second Loans (*id.* at ¶ 26). In this regard, Wells cannot claim that Section 6.3 of the MLPA provides it with any cover. To be sure, that section provides, in pertinent part, as follows:

> Neither the delivery by Seller of the Mortgage Files, Servicing Files, or any other documents required to be delivered under Section 2.01 of the [PSA], nor the review thereof or any other due diligence by the Trustee, any Master Servicer, the Special Servicer, a Certificate Owner or any other Person shall relieve [Santander] of any liability or obligation with respect to any representation or warranty or other under this Agreement or constitute notice to any Person of a Breach or Defect.

*Id.* at Ex. E. As an initial matter, the Pre-COM, COM, and the related Mortgage Loan Schedule and COM-Disk are not included within the definition of "Mortgage Files", "Servicing Files", or "documents required to be delivered under Section 2.01 of the PSA ["the "Section 2.01 Documents")]." *Id.* at Ex. F, pp. 35-37, 58, 68-72. Moreover, these documents -- which plainly identify the Second Loans -- were disclosed by Santander to Wells independent of the Mortgage Files, Servicing Files, and the Section 2.01 Documents

(*id.* at ¶ 4), and any suggestion that looking at these core deal/transaction documents would somehow constitute "due diligence" is absurd.

Accordingly, Wells has waived any rights it had to assert that Santander breached its representations and warranties for failure to disclose to the Second Loans.

## III.   THE FIVE LOANS ACTION SHOULD BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS

An action for breach of contract must be commenced within six (6) years of the date on which it accrued.   N.Y. C.P.L.R. § 213(2) (McKinney 2013).   Under New York law, a breach of contract cause of action accrues, and the statute of limitations begins to run, at the time of the breach.   *See T&N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 59 (2d Cir. 1994).   This is true even if plaintiff was unaware of the breach, and regardless of when plaintiff suffered damages.   *See Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502 (1993) (statute of limitations runs even though plaintiff is unaware of the wrong or injury); *Nat'l Urban Ventures, Inc. v. City of Niagara Falls*, 78 A.D.3d 1525, 1526, 910 N.Y.S.2d 615, 616 (4th Dep't 2010) (statute of limitations runs "even in the event that damages do not accrue until a later date.") (internal citations omitted).

Here, the MLPA and PSA are dated "as of" June 8, 2007 and June 1, 2007, respectively (*see* McClernan Decl., Exs. E, F).   The date that an agreement states as its effective date constitutes unambiguous evidence of the parties' intent to be bound from that date, and, thus, the parties are bound on the "as of" date by the loan level representations and warranties and any claims for breach of those representations and warranties accrued on that date.[10]   *See Structured Mortgage Trust 1997-2 v. Daiwa Fin. Corp.*, 02 Civ. 3232, 2003

---

[10]   *See Manns v. Norstar Bldg. Corp.*, 4 A.D.3d 799, 800, 771 N.Y.S.2d 438, 439 (4th Dep't 2004) (contract effective August 10, 2000, when contract stated it was "made as of" and "entered into" on that date, even though it was signed on January 10, 2001, so as to give effect to the intention of the parties as expressed in the unequivocal language employed) (internal quotations and citations omitted); *Colello v. Collello*, 9

U.S. Dist. LEXIS 2677, at *5 (S.D.N.Y. Feb. 25, 2003) (a claim for breach of representations and warranties runs from the original contract date). This is true even where the representation is made as of the future closing date. *Lana & Edward's Realty Corp. v. Kaltz/Weinstein P'ship*, No.: 27958/08, 2010 N.Y. Misc. LEXIS 548, at *10 (Sup. Ct., Kings Cty. Mar. 17, 2010).

The *Lana* case is directly on point. There, the parties executed an agreement dated June 28, 2002, with a closing date of October 15, 2002. *Id.* at *1, 4. The agreement, like the MLPA and PSA here, contained representations and warranties that "shall be true and correct at closing." *Id.* at *2. When plaintiff ultimately commenced its action on October 9, 2008, alleging, *inter alia*, that defendants were in breach of the agreement because the representations and warranties were not true as of the closing date, the court dismissed the action as time-barred, reasoning that:

> [t]he representation [that was false] was false when made [*i.e.*, on June 28, 2002, when the contract was executed]. Although plaintiff relies on the fact that [certain] paragraphs [of the agreement] stated that the representations were accurate, true, and correct at the time of the closing, no further act was contemplated to take place by defendants which would impact on this representation from the date of the contract until the date of the closing.

*Id.* at *10-11.

Here, the MLPA and PSA are dated "as of" June 8, 2007 and June 1, 2007, respectively, and the fact that the representations and warranties were made "as of the Closing Date" (June 21, 2007) is of no moment because, *inter alia*, "no further act was contemplated to take place by [Santander] which would impact on [the] representation[s

---

A.D.3d 855, 857, 780 N.Y.S.2d 450, 453 (4th Dep't 2004) ("It is fundamental that where parties to an agreement expressly provide that a written contract be entered into as of an earlier date than that on which it was executed, the agreement is effective retroactively as of an earlier date than on which it was executed, the agreement is effective retroactively as of the earlier date and the parties are bound thereby accordingly.") (internal quotations and citations omitted).

and warranties concerning the Second Loans] from the date of the contract[s] until the date of the closing." *See* McClernan Decl., ¶¶ 11, 20.

Accordingly, Wells' claims, if any, accrued on the dates that the MLPA and PSA were executed, not on the closing date, and the limitations period expired on June 1 and June 8, 2013. Because Wells commenced the Five Loans Action on June 20, 2013, it is untimely, and, therefore, should be dismissed.[11]

## IV.   CLAIMS 6 THROUGH 11 OF THE FIVE LOANS ACTION RELATING TO REP. 10 ARE INADEQUATELY PLED AND SHOULD BE DISMISSED

Representation and Warranty 10 ("Rep. 10") of the MLPA states that "[t]he origination, servicing and collection practices used by [Santander] or, to its knowledge, any prior holder of the related Mortgage Note with respect to such Mortgage Loan have been in all material respects legal, proper and prudent and have met customary industry standards." McClernan Decl., Ex. E (Exhibit B, ¶ 10). In support of Plaintiff's Claims 6 through 10 in the Five Loans Action, which assert that Santander breached Rep. 10, Wells simply alleges:

> … [Santander's] origination of the [Five First] Loans on collateral properties encumbered by second mortgages was not proper and prudent, and did not meet customary industry standards as required by [Rep. 10].

Five Loans Complaint [ECF # 1], ¶ 7.

---

[11]   Santander recognizes that the courts in two cases, *U.S. Bank, N.A. v. Dexia Real Estate Capital Markets*, 12 Civ. 9412, 2013 U.S. Dist. LEXIS 80544 (S.D.N.Y. June 6, 2013), and *ACE Sec. Corp. v. DB Structured Products, Inc.*, 40 Misc. 3d 562, 965 N.Y.S.2d 844 (Sup. Ct., N.Y. Cty. 2013), have concluded that a breach of contract claim accrues when the seller fails to repurchase the allegedly faulty loans, but believes that these decisions are, respectfully, incorrect, and notes that the decision in *ACE Sec. Corp.* is the subject of a pending appeal to the Appellate Division, First Department. These decisions are contrary to New York law as articulated by the New York Court of Appeals in *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 771, 944 N.Y.S.2d 742, 746 (2012), wherein it held that a contract claim accrues when a plaintiff can first make a demand for payment, not when plaintiff chooses to make that demand. Accordingly, Justice O. Peter Sherwood's decision in *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*, 2013 N.Y. Misc. LEXIS 2001, 2013 N.Y. Slip Op 50743(U) (Sup. Ct., N.Y. Cty. May 10, 2013), correctly rejected the analysis of the decisions in the *Dexia* and *ACE* cases.

> [Santander] breached [Rep. 10] with respect to each of the
> [Mortgage] Loans because its origination of the Loans, the
> collateral properties for which were encumbered by undisclosed
> second loans … was not proper and prudent, nor did it meet
> customary industry standards.

*Id.* at ¶ 44.

The foregoing allegations are really nothing more than a recitation of the text of Rep. 10, which is insufficient.  Indeed, Wells does not allege facts explaining how Santander's origination of the Five First Loans on the subject properties was not proper and prudent and somehow ran afoul of customary industry standards, nor does Wells identify even a single customary industry standard that Santander allegedly violated.  Wells seems to suggest that the mere existence of the Five Second Loans is the basis for the alleged breach, but that is ridiculous.  To be sure, having multiple mortgage liens on a single piece of property (commercial or residential) is hardly an anomaly, rather, it is prevalent and *entirely consistent with, not violative of,* customary industry standards (*see* McClernan Decl., ¶ 25).

Wells is required to plead facts "sufficient to put [Santander] on notice of the nature and scope of its claims", but has failed to do so.  *Torchlight Loan Servs., LLC,* 2012 U.S. Dist. LEXIS 105895, at *13, 22 (breach of warranty claim dismissed where it contained no allegations concerning the failure of the improvements to comply with applicable zoning laws and ordinances and no particular zoning law or ordinances were identified).  In addition to the fact that Wells failed to give Santander sufficient notice of its claim for breach of Rep. 10, its allegations are facially implausible, and thus, its Claims 6 through 10 should be dismissed.  Finally, because Claim 11 of Wells' Complaint in the Five Loans Action presupposes a breach of Rep. 10, Claim 11 should similarly be dismissed.

V.   **CLAIMS 5, 10, AND 11 OF THE FIVE LOANS ACTION**
**RELATING TO REP. 18 AND REP. 10 WITH RESPECT TO**
**THE BRADENTON MEZZANINE DEBT SHOULD BE DISMISSED**

Wells asserts for its Claim 5 in its Complaint filed in the Five Loans Action that Santander breached Rep. 18 due to the alleged non-disclosure of the Bradenton Mezzanine Debt. Santander also anticipates that Wells will argue in its response to POINT IV, *supra*, that for its Claim 10, Wells adequately alleged that Santander breached Rep. 10 due to the existence of Bradenton Mezzanine Debt. Both Claims 5 and 10, however, should be dismissed for failure to state a claim since there is absolutely no question, and Wells cannot dispute, that the Bradenton Property *is not encumbered* by the Bradenton Mezzanine Debt.

Even the most cursory review of the relevant debt instruments shows that the Bradenton Mezzanine Debt was not secured by the Bradenton Property (*see* Malatak Decl.¶¶ 10-11). As an initial matter, the borrower (MPI Marina Palms Holding Company, LLC) of the Bradenton Mezzanine Debt was not even the same borrower (Marina Palms 299, LLC) of the Bradenton First Loan. Additionally, the related Subordination and Intercreditor Agreement specifically acknowledges that "the collateral for the [Bradenton] Mezzanine [Debt] consists solely of the assets of [MPI Marina Palms Holding Company, LLC], including the membership interest that [MPI Marina Palms Holding Company, LLC] owns in [Marina Palms 299, LLC]." *Id.* at ¶ 10 (Ex. A, pp. 2-3). It makes no reference to Marina Palms 299, LLC granting the Bradenton Mezzanine Lender a security interest in the Bradenton Property. To the contrary, the Mezzanine Debt lender expressly "disclaim[ed] any security interest in or to all or any portion of the Prime Collateral [which includes the Bradenton Property]." *Id.* at p. 3.

Moreover, in the related Consolidated, Amended And Restated Multifamily Mortgage, Assignment Of Rents And Security Agreement (the "Security Agreement"),

-17-

Marina Palms 299, LLC specifically covenanted to Santander that it "shall not grant … any liens or encumbrances on the [Bradenton] Property or any other collateral securing the [Bradenton First Loan] or any other assets of [Marina Palms 299, LLC] to secure the [Bradenton] Mezzanine [Debt]." *Id.* at ¶ 11 (Ex. B, p. 49). The foregoing is entirely consistent with Santander's disclosure of the Bradenton Mezzanine Debt in the COM (McClernan Decl., Ex. C, pp. 13, 41, 60) and Pre-COM (*id.* at Ex. D, pp. 13, 14, 41, 60), which described the Bradenton Mezzanine Debt as being "secured by a pledge of equity interests in the Borrower", not the subject mortgaged property, as Wells contends.

The fact that the Bradenton Mezzanine Debt was not a lien (junior or otherwise) on the Bradenton Property is not lost on Wells. Indeed, in or around September 2009, Wells commenced a foreclosure action to foreclose on the Bradenton First Loan, and, in doing so, Wells identified in its Verified Complaint only Chadwell Supply, Inc. as a party that possibly held a lien on the Bradenton Property which is "subordinate, junior, and inferior to the lien of [Wells under the Bradenton First Loan.]" Malatak Decl., ¶ 12 (Ex. C, ¶ 29). This Court can take judicial notice of Wells' Verified Complaint filed in its Florida foreclosure action (which, remarkably, attaches as its exhibit B a copy of the Security Agreement discussed, *supra*), and Santander respectfully requests that the Court do so. *See* Fed. R. Evid. 201(b); *Rothman v. Gregor*, 220 F.3d 81, 91-92 (2d Cir. 2000) (taking judicial notice of complaint filed in related proceeding as a public record). Surely if Wells had considered the Bradenton Mezzanine Debt to be a lien (junior or otherwise) on the Bradenton Property, Wells would have named the Bradenton Mezzanine Debt lender as a party to its foreclosure action, which Wells was required to do in order to extinguish and foreclose upon any alleged interest in the Bradenton Property held by the Bradenton Mezzanine Debt lender. *Sandquist & Snow, Inc. v. P.H. Kellog*, 133 So. 65, 68 (Fla. 1931)

(judgment of foreclosure not binding upon, and does not affect the rights of, a subsequent mortgagee who was not a party to the foreclosure action).

Accordingly, Claims 5 and 10 of the Five Loans Action should be dismissed. Additionally, because Claim 11 presupposes a breach of Rep. 10 with respect to the Bradenton Mezzanine Debt, Claim 11 should similarly be dismissed.

**WHEREFORE**, Santander Bank, N.A., respectfully requests that this Court grant the instant motion in its entirety, and grant it such other and further relief as this Court deems just and proper.

Dated:      New York, New York
              October 25, 2013

                      **HAHN & HESSEN LLP**
                      *Attorneys for Defendant/Counter-Claimant*
                      *Santander Bank, N.A.*

                      By: _____
                          Robert J. Malatak, Esq.
                          Annie Power, Esq.

                      488 Madison Avenue
                      New York, New York 10022
                      (212) 478-7200