**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
WELLS FARGO BANK N.A., as Trustee for the     :
Certificateholders of Sovereign Commercial Mortgage   :
Securities Trust, 2007-C1, Commercial Mortgage Pass-  :
Through Certificates, Series 2007-C1, acting by and    :
through WATERSTONE ASSET MANAGEMENT, LLC, :
as Sub-Special Servicer,                            :
                                     : Case Nos.    13 cv 1222 (NRB)
       Plaintiff,                       :            13 cv 4313 (NRB)
                                      :
       - against -                     :
                                      :
SOVEREIGN BANK, N.A.,                :
                                      :
       Defendant.                    :
------------------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT

Duval & Stachenfeld LLP
555 Madison Ave., 6th Floor
New York, New York 10022
Telephone:  (212) 883-1700
Facsimile:  (212) 883-8883

*Attorneys for Plaintiff*

Snyder Law Firm LLC
13401 Mission Road, Suite 207
Leawood, Kansas 66209
Telephone: (913) 685-3900
Facsimile: (913) 440-0724

*Of Counsel to Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES.......................................................................................... II

ARGUMENT ............................................................................................................ 6

   I.   Standard of Review....................................................................................... 6

      A.   Standard For Motion To Dismiss Pursuant to Rule 12(b)(6) ..................... 6

      B.   Standard For Motion For Summary Judgment .......................................... 7

   II.   The Motion for Summary Judgment as to Both Actions Should Be Denied...................... 9

      A. The Undisclosed Seconds Were Not Disclosed in the Mortgage Loan Schedule, As Required by Rep 18 ................................................................................ 9

      B. Defendant is Not Entitled to Reformation of the MLPA and PSA Because It Has Failed to Provide Any Evidence, Let Alone Uncontroverted Evidence, of a Mutual Mistake or Scrivener's Error ........................................................................... 14

         1.   Reformation of Contract Requires a "Mutual Mistake" Which is Contrary to a Prior Agreement ......................................................................................... 14

         2.   Defendant Has Failed To Provide Evidence of Anything More Than At Most a Unilateral Mistake ................................................................................... 16

      C. Plaintiff Has Not Waived Its Right To Enforce Rep 18 Because It Had No Knowledge of the Undisclosed Seconds, and Even If It Did, the MLPA Expressly Provides That Any Such Knowledge is Irrelevant. ................................................................ 18

   III.   The Five Loan Action Is Not Time-Barred................................................ 22

   IV.   Defendant's Other Grounds For Moving to Dismiss the Five Loan Action Are Moot Due to Plaintiff's Filing of an Amended Complaint ............................................ 25

CONCLUSION.......................................................................................................... 26

### TABLE OF AUTHORITIES

**Cases**

*ACE Sec. Corp. v. DB Structured Products, Inc.*,
   965 N.Y.S.2d 844 (Sup. Ct. N.Y. Cnty. 2013) ..................................................... 23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 7

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Corp.*,
   No. 11 Civ. 0505, 2013 U.S. Dist. LEXIS 87863 (S.D.N.Y. June 19, 2013) ............ 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 7

*Bronx Entm't LLC v. St. Paul's Mercury Ins. Co.*,
   265 F. Supp. 2d 359 (S.D.N.Y. 2003) ................................................................... 12

*Carb v. Lincoln Benefit Life Co.*,
   09 Civ. 2980, 2009 U.S. Dist. LEXIS 87647 (S.D.N.Y. Sept. 22, 2009) ................ 14

*Carribbean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*,
   598 F.2d 1264 (2d Cir. 1979) ............................................................................... 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................. 8

*Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*,
   620 F.3d 146 (2d Cir. 2010) ................................................................................. 7

*Coggins v. Cnty. of Nassau*,
   No. 07-CV-3624, 2008 U.S. Dist. LEXIS 48239 (E.D.N.Y. June 20, 2008) ............ 8

*Collins v. Harrison-Bode*,
   303 F.3d 429 (2d Cir. 2002) ................................................................................. 15

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ............................................................................................... 7

*Famous Horse, Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................. 7

*Flaherty v. Coughlin*,
   713 F.2d 10 (2d Cir. 1983) ................................................................................... 8

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 2001) ................................................................. 21

*Gallo v. Prudential Residential Servs., L.P.*,
   22 F.3d 1219 (2d Cir. 1994) .................................................................. 8

*Haile v. Sag Harbor*,
   639 F. Supp. 718 (E.D.N.Y. 1986) ......................................................... 8

*Healy v. Rich Prods. Corp.*,
   981 F.2d 68 (2d Cir. 1992) ...................................................... 14, 15, 18

*In re Franks*,
   363 B.R. 839 (N.D. Ohio 2006) ............................................................ 12

*Jackson v. GMC*,
   770 F. Supp. 2d 570 (S.D.N.Y. 2011) ................................................... 7

*John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*,
   717 F.2d 664 (2d Cir. 1983) ................................................................ 14

*Khezrie v. Greenberg*,
   53 F. App'x 592 (2d Cir. 2002) ..................................................... 15, 17

*Lana & Edward's Realty Corp. v. Kaltz/Weinstein P'ship*,
   2010 N.Y. Misc. LEXIS 548 (Sup. Ct., Kings Cnty. Mar. 17, 2010) ............... 24, 25

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*,
   237 F. Supp. 2d 618 (D. Md. 2002) ...................................................... 23

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003) ................................................................. 7

*Loewenson v. London Mkt. Cos.*,
   351 F.3d 58 (2d Cir. 2003) ................................................................. 15

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ............................................................... 19

*Messina v. Mazzeo*,
   854 F. Supp. 116 (E.D.N.Y. 1994) ........................................................ 8

*Metro. Coal Co. v. Howard*,
   155 F.2d 780 (2d Cir. 1964) ............................................................... 19

*Metrokane, Inc. v. Wine Enthusiast*,
   160 F. Supp. 2d 633 (S.D.N.Y. 2001) ..................................................... 8

*Middle East Crisis Response v. City of Kingston*,
   1:08-CV-690, 2008 U.S. Dist. LEXIS 101110 (N.D.N.Y Dec. 15, 2008)................................. 8

*Nash v. Kornblum*,
   12 N.Y.2d 42 (1962) ................................................................................................ 16

*Pickering v. Am. Express Travel Related Servs.*,
   98 Civ. 8998, 1999 U.S. Dist. LEXIS 19676 (S.D.N.Y. Dec. 21, 1999) ................................. 8

*Rogarth v. Siebenmann*,
   129 F.3d 261 (2d Cir. 1997)........................................................................................... 21

*Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.*,
   02 Civ. 3232, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003) ............................. 24, 25

*T & N PLC v. Fred S. James & Co.*,
   29 F.3d 57 (2d Cir. 1994)............................................................................................... 23

*Ticali v. Roman Catholic Diocese of Brooklyn*,
   41 F. Supp. 2d 249 (E.D.N.Y. 1999)................................................................................ 8

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
   11 Civ. 7426 (RWS), 2012 U.S. Dist. LEXIS 105895 (S.D.N.Y. July 25, 2012) ................... 11

*TradeWinds Airlines, Inc. v. Soros*,
   08 Civ. 5901, 2012 U.S. Dist. LEXIS 39459 (S.D.N.Y. Mar. 22, 2012)................................. 26

*Travelers Indemnity Co. v. CDL Hotels USA, Inc.*,
   322 F. Supp. 2d 482 (S.D.N.Y. 2004)...................................................................... 15, 18

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
   12 Civ. 9412, 2013 U.S. Dist. LEXIS 80544 (S.D.N.Y. June 6, 2013) ................................. 23

*Weir v. Guardian Life Ins. Co. of Am.*,
   351 F. App'x 492 (2d Cir. 2009)..................................................................................... 15

**Other Authorities**

*Black's Law Dictionary* 208 (3d ed. 2006)................................................................... 22

Restatement (Second) of Contracts § 155................................................................... 14

Talcott J. Franklin & Thomas F. Nealon, III, *Mortgage and Asset Backed Securities Litigation Handbook* § 1:4 at 1-12 (West 2012) ........................................................................... 12

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................... 7

Fed. R. Civ. P. 8 .................................................................................................................. 6

Wells Fargo Bank, N.A., as Trustee for the Certificateholders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1, acting by and through Waterstone Asset Management, LLC, as Sub-Special Servicer (collectively, "Plaintiff"), respectfully submits this Memorandum of Law and accompanying Response to Defendant's Rule 56.1 Statement, Declaration of Paul D. Snyder, Declaration of Roy H. Owen, and exhibits attached thereto, in opposition to Defendant Sovereign Bank, N.A.'s Motion to Dismiss and/or for Judgment on the Pleadings and/or for Summary Judgment (the "Motion"). For all of the reasons set forth below, the Motion should be denied in its entirety.

## INTRODUCTION

Defendant's Motion concerns two closely related CMBS repurchase actions. The Enco Loan Action (Case No. 13-cv-1222) concerns one loan, and the Five Loan Action (Case No. 13-cv-4313) concerns five additional loans (collectively, the "Actions" and the "Loans"), all of which were originated and securitized by Defendant[1] with hundreds of other loans into a trust known as Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trust"). Plaintiff is the Trust, acting by and through the Trust's Sub-Special Servicer.

The essence of the Actions is really quite simple. Defendant made a number of Representations and Warranties in the Mortgage Loan Purchase Agreement ("MLPA") concerning the Loans. These Representations and Warranties are made for the benefit of the investors ("Certificateholders") who purchase shares of the Trust known as Certificates. The Certificateholders rely upon the Representations and Warranties and value the loans based upon the information that is expressly warranted therein. The Certificateholders are entitled to rely

---

[1]     As successor by merger to Independence Community Bank.

upon the Representations and Warranties, both as a matter of law and the governing contracts, regardless of whether the Certificateholders have or have not performed their own due diligence of the thousands of documents transferred to the Trust by the loan seller or otherwise possess information that may be inconsistent with the warranted information.

Representation and Warranty 18 ("Rep 18") states that "[n]o Mortgaged Property secures any mortgage loan not represented on the Mortgage Loan Schedule; … no Mortgage Loan is secured by property that secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule." Defendant breached Rep 18 because the mortgaged properties for the Loans were, in fact, encumbered by second mortgages which were not disclosed in the Mortgage Loan Schedule (the "Undisclosed Seconds"). These Undisclosed Seconds are also one basis for Plaintiff's claims in the Five Loan Action that Defendant breached Representation and Warranty 10 ("Rep 10"), which warranted that "[t]he origination, servicing and collection practices used by Seller ... with respect to such Mortgage Loan have been in all material respects legal, proper and prudent and have met customary industry standards."[2]

Defendant cannot dispute that the Undisclosed Seconds are not mentioned in the Mortgage Loan Schedule, so instead it raises a number of arguments that are belied by the facts and law. Those arguments are the subject of the present Motion. Defendant's primary argument is that the Undisclosed Seconds were disclosed in other "key" and "core" "transactional documents." In fact, the MLPA and Pooling and Servicing Agreement ("PSA") are the only agreements which govern the securitization. While the Undisclosed Seconds were mentioned in a

---

[2]     Because Defendant's summary judgment arguments pertain to the Undisclosed Seconds, they pertain equally to Plaintiff's Rep 18 claim and that portion of Plaintiff's Rep 10 claim. Therefore, Plaintiff will simply refer to Rep 18 for the remainder of this Opposition. Defendant's other arguments concerning the sufficiency of the Rep 10 allegations are rendered moot by Plaintiff's filing of an Amended Complaint in the Five Loan Action (Doc. 17) on November 14, 2013.

Confidential Offering Memorandum ("COM") and other preliminary documents crafted by Defendant or at its behest prior to the securitization, these disclosures are irrelevant because, as explained in greater detail below, Rep 18 requires that the Undisclosed Seconds be included in one specific document – the Mortgage Loan Schedule.

Defendant concedes that the Mortgage Loan Schedule is attached as Exhibit A to the MLPA, and a copy is also attached again as Exhibit B to the PSA. In neither copy of the Mortgage Loan Schedule do the Undisclosed Seconds appear. Even if Defendant could provide one shred of evidence that Plaintiff was aware of the Undisclosed Seconds – and it does not – such showing would be irrelevant because Plaintiff was entitled to exclusively rely upon Rep 18 and the Mortgage Loan Schedule under both well-established case law and the contract's own "no due diligence" provision, set forth below.

As a fallback argument, Defendant moves for summary judgment that the Mortgage Loan Schedule to the MLPA and PSA should be reformed due to "mutual mistake" and "scrivener's error." But as the essential predicate to a mutual mistake or scrivener's error, Defendant must first establish that the contracts are contrary to a prior agreement or "meeting of the minds" of the parties, and Defendant fails to provide any evidence that Plaintiff had anything to do with crafting the MLPA, PSA, or Mortgage Loan Schedule, let alone a meeting of the minds concerning what was to be disclosed therein. In fact, the evidence presented by Defendant demonstrates, at best, a unilateral mistake on the part of Defendant, which is no basis for reformation.

Finally, Defendant argues that the Five Loan Action is time-barred due to the statute of limitations. However, under recent CMBS and RMBS case law, the statute of limitations for repurchase actions accrued when Defendant refused to repurchase the Loans in 2013 and, in any

event, certainly accrued no earlier than when the Representations and Warranties were made and conveyed on the Closing Date. Utilizing either date, the Five Loan Action is timely.

The remainder of Defendant's motion to dismiss the Five Loan Action is rendered moot by Plaintiff's recently filed Amended Complaint (Doc. 17) pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.[3]

## STATEMENT OF FACTS

Pursuant to the MLPA dated June 8, 2007 and PSA dated June 1, 2007, the Trust was created to hold two hundred sixty four (264) commercial real estate mortgages originated and pooled by Defendant and worth more than $1 billion. MLPA, Ex. A; PSA, Ex. B;[4] Def.'s 56.1 Stmt. ¶ 11. Pursuant to the MLPA, Defendant sold the Loans on June 21, 2007 to Morgan Stanley Capital I, Inc. ("MS Capital I"),[5] which served as the nominal "Depositor" for the transaction. MLPA § 1; Defendant's Statement Pursuant to Local Civil Rule 56.1, ("Def.'s 56.1 Stmt.") ¶ 5. On this same date, and pursuant to the PSA, MS Capital I then sold the Loans to the newly created Trust acting by and through Wells Fargo Bank, N.A. ("Wells Fargo"), appointed under the PSA as Trustee. PSA § 2.01; Def.'s 56.1 Stmt. ¶ 6. Pursuant to the MLPA, Defendant made certain "Representations and Warranties" regarding the Loans for the benefit of the Trust and the Certificateholders. MLPA § 6.3; MLPA Exhibit B. These Representations and

---

[3]     The Amended Complaint includes significant additional factual support for Plaintiff's Rep 10 claims, and also asserts new Rep 7 claims regarding three of the loans. In addition, Plaintiff is no longer asserting a Rep 18 claim regarding the Marina Palms ("Bradenton") Loan.

[4]     A complete copy of the MLPA and all relevant provisions of the PSA are attached to the Snyder Decl. as Exhibits 1 and 2, respectively. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the PSA.

[5]     Given that Plaintiff has utilized the abbreviated term "MS Capital I" in earlier pleadings to refer to nominal Depositor Morgan Stanley Capital I, Inc., Plaintiff has retained the use of that term herein for consistency. Defendant, on the other hand, uses the term "Morgan Stanley" (which could create confusion with Morgan Stanley, the financial services firm, which was not the special purpose entity created to be the Depositor).

Warranties related to, *inter alia*, the loan origination, servicing and default status of the Loans through the Closing Date. *Id*. Pursuant to the PSA, MS Capital I assigned and transferred to Plaintiff its rights under the MLPA, including all rights to enforce any breach of Sovereign's Representations and Warranties contained within the MLPA. PSA § 2.01; Def.'s 56.1 Stmt. ¶ 31.

Among other representations and warranties, Defendant made the following Representation and Warranty 18 ("Rep. 18"): "No Mortgaged Property secures any mortgage loan not represented on the Mortgage Loan Schedule; … no Mortgage Loan is secured by property that secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule." MLPA Ex. B, ¶ 18; Def.'s 56.1 Stmt. ¶ 24. The Mortgage Loan Schedule referenced in Rep 18 is attached as Exhibit A to the MLPA. Def.'s 56.1 Stmt. ¶ 27. Despite the clear language of Rep 18, the mortgaged properties for the Loans were encumbered by Undisclosed Seconds not included in the Mortgage Loan Schedule attached as Exhibit A to the MLPA and Exhibit B to the PSA, or in the Exceptions to Representations and Warranties attached as Exhibit C to the MLPA. Def.'s 56.1 Stmt. ¶ 53; MLPA, Exs. A and C; PSA, Ex. B.

Nevertheless, Defendant contends that, because the Undisclosed Seconds were identified in other documents – the preliminary COM (the "Pre-COM"), COM, the COM Disk, Comfort Letters, Indemnification Agreement, and Officer Certifications (collectively, the "Preliminary Transaction Documents") – Defendant adequately disclosed the Undisclosed Seconds. *See, e.g.,* Def.'s 56.1 Stmt. ¶¶ 27, 26, 42. However, Defendant provides zero evidence that Plaintiff was involved in negotiating, drafting, or reviewing the Preliminary Transaction Documents, or had any knowledge of the Undisclosed Seconds, other than to provide a Declaration of its representative James B. McClernan which is devoid of any underlying factual support such as references to e-mails, memos, correspondence, communications, any specific persons that were

allegedly involved, or specific meetings or events that transpired. This is because there is no evidence of these things. In fact, the Trust was not even created until the Closing Date (June 21, 2007) (Owen Decl. ¶ 5).

Further, the Preliminary Transaction Documents, and whether or not Plaintiff reviewed them, are irrelevant given the application of the "no due diligence" provision of the MLPA – which is intended to hold Defendant to its representations and warranties notwithstanding any extra-contractual disclosures. MLPA § 6.3. Here, the "no due diligence" provides, in pertinent part:

> Neither the delivery by Seller of the Mortgage Files, Servicing Files, or any other documents required to be delivered under Section 2.01 of the [PSA], nor the review thereof **or any other due diligence by the Trustee, any Master Servicer, the Special Servicer, a Certificate Owner or any other Person** shall relieve [Defendant] of any liability or obligation with respect to any representation or warranty or otherwise under this Agreement or constitute notice to any person of a Breach or Defect.

MLPA § 6.3 (emphasis added). This "no due diligence" provision disclaims any obligation by the Plaintiff to review any of the thousands of pages of loan files, marketing materials, offering memoranda and other material prepared by Defendant in connection with the securitization. *Id.* Consequently, even if the Undisclosed Seconds were identified in the Preliminary Transaction Documents, Defendant is not relieved of its liability to repurchase any of the Loans for which it has breached its representations and warranties.

## ARGUMENT

## I.   Standard of Review

### A.  Standard For Motion To Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In *Twombly*, the Supreme Court explained that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 55 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the motion to dismiss stage, all factual allegations must be taken as true, even if "doubtful in fact." *Twombly*, 550 U.S. at 589. This rule applies with full force to allegations that are generally worded, without "specific facts." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Iqbal*, 556 U.S. at 678 ("detailed" allegations not required); *Twombly*, 550 U.S. at 569 n.14, 570 (neither "particularized" allegations nor "fact pleading of specifics" is required).

A court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse, Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010); *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). Defendant bears the burden of persuasion on a motion to dismiss. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003). To prevail, defendant must demonstrate that plaintiff's claims are so farfetched as to be implausible – that even taking all the factual allegations as true, it is "clearly entitled to judgment" at this early procedural stage. *Jackson v. GMC*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011).

### B.  Standard For Motion For Summary Judgment

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests on the moving party to demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F. Supp. 2d 249, 255 (E.D.N.Y. 1999). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Courts are generally hesitant to grant summary judgment motions before any discovery has occurred, particularly when the motion relies heavily on declarations of persons whom the non-moving party has not had an opportunity to depose. *See, e.g., Messina v. Mazzeo*, 854 F. Supp. 116, 142 (E.D.N.Y. 1994) ("As a general rule, whenever discovery of key participants has not been taken, summary judgment is premature") (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("Caution should be exercised in granting summary judgment … when the party opposing the motion has been denied relevant discovery")).[6]

---

[6]     *See also Pickering v. Am. Express Travel Related Servs.*, 98 Civ. 8998, 1999 U.S. Dist. LEXIS 19676, at *5 (S.D.N.Y. Dec. 21, 1999) ("Summary judgment motion is proper only 'after adequate time for discovery'") (quoting *Celotex Corp.*, 477 U.S. at 322; *Coggins v. Cnty. of Nassau*, No. 07-CV-3624, 2008 U.S. Dist. LEXIS 48239, at *13 (E.D.N.Y. June 20, 2008) ("[C]ourts routinely deny summary judgment motions as premature when they are raised prior to plaintiff's being provided with the opportunity for discovery") (citing numerous cases); *Haile v. Sag Harbor*, 639 F. Supp. 718, 720 (E.D.N.Y. 1986) ("In light of the fact that little or no discovery has been taken, the Court finds that summary judgment is premature"); *Metrokane, Inc. v. Wine Enthusiast*, 160 F. Supp. 2d 633, 637 (S.D.N.Y. 2001) (summary judgment "generally inappropriate" when "the parties have not had the opportunity to complete discovery" (internal quotation omitted)); *Middle East Crisis Response v. City of Kingston*, 1:08-CV-690, 2008 U.S. Dist. LEXIS 101110, at *2 (N.D.N.Y Dec. 15, 2008) ("courts should ordinarily afford the opponent a reasonable opportunity to conduct discovery before entertaining" a motion for summary judgment).

**II.     The Motion for Summary Judgment as to Both Actions Should Be Denied**

It is a simple, inescapable fact that the Undisclosed Seconds were not included in the Mortgage Loan Schedule as required by Rep 18, and were not included in the Exceptions to Representations and Warranties attached as Exhibit C to the MLPA. Defendant nevertheless argues that summary judgment should be granted in its favor because: (1) the Undisclosed Seconds actually were disclosed in the Mortgage Loan Schedule by virtue of a mere footnote number, without any footnote text; (2) the Mortgage Loan Schedule should be reformed due to mutual mistake or scrivener's error; and (3) Plaintiff nevertheless waived its right to enforce Rep 18 due to its purported knowledge of the Undisclosed Seconds. These arguments are (1) contrary to the law of express warranties (which are intended precisely to relieve the promisee of any duty to ascertain the facts for itself), (2) mischaracterize and undermine the scope and nature of this one billion dollar commercial mortgage-backed securitized transaction (which included the transfer of hundreds of loans and many thousands pages of documents – all of which Plaintiff was entitled, as a matter of law, to review or not to review), and (3) ignore the clear and unambiguous language of the "no due diligence" provision in the MLPA (which is controlling and puts to rest Defendant's assertions that disclosures in documents other than the MLPA somehow exculpate Defendant from its clear and admittedly false representations and warranties).

**A.  The Undisclosed Seconds Were Not Disclosed in the Mortgage Loan Schedule, As Required by Rep 18**

Defendant admits that the Mortgage Loan Schedule referenced by Rep 18 is attached as Exhibit A to the MLPA (Def.'s 56.1 Stmt. ¶ 27), and that the Mortgage Loan Schedule, and the copy thereof attached as Exhibit B to the PSA, and the Exceptions to Representations and Warranties attached as Exhibit C to the MLPA, all fail to mention the Undisclosed Seconds (*id.*

at ¶ 53). Having conceded these points, Defendant attempts to evade liability by resorting to a contorted exercise of document mixing and matching that is both unfounded and completely irrelevant.

Defendant argues that because the Undisclosed Seconds were disclosed in a Footnote 5 to a list of loans attached to the COM, the inclusion of a Footnote 5 symbol (the number only) in the Mortgage Loan Schedule – without the corresponding footnote text – somehow disclosed the Undisclosed Seconds in the Mortgage Loan Schedule. This argument fails for two reasons.

First, the fact that the Undisclosed Seconds were mentioned in the COM does not constitute disclosure in the Mortgage Loan Schedule – the one place where the Undisclosed Seconds had to be disclosed as a matter of law.[7] Despite Defendant's efforts to characterize the COM as a "key" and "core" "transaction document," it is irrelevant to Rep 18 in the MLPA. The securitization is governed by two agreements: the MLPA (whereby Defendant conveyed the loans to the Depositor and made its Representations and Warranties), and the PSA (whereby the Trust was created and the loans were deposited therein). The Representations and Warranties are Exhibit B to the MLPA. The Mortgage Loan Schedule is Exhibit A to the MLPA, as Defendant concedes. Def.'s 56.1 Stmt. ¶ 27. Rep 18 states quite clearly that "[n]o Mortgaged Property secures any mortgage loan not represented on the Mortgage Loan Schedule; … no Mortgage Loan is secured by property that secures another mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule." MLPA Ex. B, ¶ 18 (emphasis added).

Despite Defendant's suggestion to the contrary (*see, e.g.*, Def.'s 56.1 Stmt. ¶¶ 11, 20, 27), the loan list attached as Exhibit A-1 to the COM is not some alternative copy of the Mortgage

---

[7]    Any such knowledge of the Undisclosed Seconds, from the COM or other documents leading up to the transaction, is also completely irrelevant given the application of the "no due diligence" provision of the MLPA – as discussed in Section II.C below.

Loan Schedule; nowhere in the COM is it referred to as such, and nowhere does the MLPA incorporate the COM loan list (*see, e.g.*, Pltf.'s Response to Def.'s 56.1 Stmt. ¶ 11). They are separate exhibits attached to separate documents, and Defendant's efforts to combine them or somehow utilize the COM to manufacture a disclosure in the Mortgage Loan Schedule that does not exist, are unavailing.

Second, while mentioning the Undisclosed Seconds in the COM is irrelevant as explained above, Defendant does not present one shred of evidence that Plaintiff was even aware of the Footnote 5 text in the COM concerning the Undisclosed Seconds or was involved in drafting or negotiating the COM. Instead, Defendant primarily argues – in a footnote – that MS Capital I, the nominal Depositor entity which merely served as Defendant's intermediary for the securitization, was involved in crafting the COM and had knowledge of the Undisclosed Seconds, and such knowledge should in turn be imputed to Plaintiff as the "assignee" of the Depositor. *See* Doc. 35, Defendant's Memorandum of Law ("Def.'s Mem.") at 6 n.7. This argument is not supported by Defendant's cited authority and ignores the relationship between MS Capital I and Defendant.

Defendant's first cited case, *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 11 Civ. 7426 (RWS), 2012 U.S. Dist. LEXIS 105895, at *5 (S.D.N.Y. July 25, 2012), simply sets forth the undisputed principle in CMBS cases that under the PSA, the trustee, as successor-in-interest to the rights of the depositor, may enforce the representations and warranties in the MLPA and is subject to the exclusive remedy provisions of the MLPA. The remaining two non-CMBS cases relied upon by Defendant simply stand for the proposition that an assignee takes a <u>claim</u> subject to any limitations it had in the hands of the assignor. *See Carribean S.S. Co. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266-67 (2d Cir. 1979) ("One cannot make an

arbitrable claim out of a non-arbitrable one by assigning it to a person having a broad 'any dispute' arbitration contract with party against whom the claim lies."); *Bronx Entm't LLC v. St. Paul's Mercury Ins. Co.*, 265 F. Supp. 2d 359, 361 (S.D.N.Y. 2003) (assignee has only those rights under the insurance policy as did the assignor as against the insurance company).

Importantly, these cases have nothing to do with imputing knowledge of the assignor to the assignee. Such knowledge is generally <u>not</u> imputed,[8] and it would be particularly egregious in this instance to impute MS Capital I's knowledge to Plaintiff due to MS Capital I's role in the transaction as Depositor. In this transaction, like any other CMBS transaction, the Depositor merely served as a nominal intermediary between Defendant, as loan originator, and the Trust. The Depositor is hardly an independent, arm's length participant. It does not even hold the loans transferred through it to the Trust for any meaningful time. The loans are transferred from Originator to Depositor (via the MLPA) and from Depositor to Trust (via the PSA) contemporaneously on the Closing Date. "As a first step in effecting the securitization, the loans created or purchased by the originator are sold to a 'Depositor' pursuant to a Loan Purchase and Sale Agreement. . . . <u>The Depositor is an entity established for this sole purpose, has no creditors and is interposed between the Originator and what will be the ultimate securitization entity in an effort to minimize the chances that subsequent avoidance or other actions involving the Originator could claw back the loans from the securitization entity</u>." Talcott J. Franklin & Thomas F. Nealon, III, *Mortgage and Asset Backed Securities Litigation Handbook* § 1:4 at 1-12 (West 2012) (emphasis added).

---

[8]    *See In re Franks*, 363 B.R. 839, 843 (N.D. Ohio 2006) ("knowledge of an assignor is generally not imputed to an assignee because there is no relationship which would warrant such imputation"). Defendant has presented no evidence of a relationship between MS Capital I and Plaintiff that would warrant the imputation of knowledge from an assignor to an assignee. To the contrary, the role of MS Capital I as Depositor and its relationship with <u>Defendant</u> in this transaction demonstrates why knowledge should not be imputed.

Thus, to impute MS Capital I's knowledge, if any, to Plaintiff under these circumstances would be manifestly unfair and improper given that MS Capital I was a mere conduit for a transaction which contemplated that the Loans would be transferred contemporaneously into the Trust. Indeed, such a finding would have a chilling effect on securitizations – as investors in securitized trusts expressly bargain for representations and warranties and not to be held to their own knowledge or the knowledge of others (including the Depositor).

Finally, even assuming that MS Capital I had knowledge which could be imputed to the Trust, that knowledge is irrelevant given the operation of the "no due diligence" provision in the MLPA (discussed more fully below). That provision expressly provides that Defendant is not relieved of liability for a breach of its representations and warranties regardless of any knowledge gathered or not gathered by Plaintiff.

Regardless, assuming, *arguendo*, that MS Capital I's knowledge could be imputed to Plaintiff (which it cannot be), and further assuming that any such knowledge was not disclaimed by the "no due diligence" provision (which ignores the plain meaning of the provision), what MS Capital I knew and when it knew it presents unresolved questions of fact precluding summary judgment. *See, e.g.*, Pltf's Response to 56.1 Stmt. ¶ 4. Consequently, Defendant's argument that the Undisclosed Seconds were disclosed – either in the Mortgage Loan Schedule or through knowledge purportedly imputed from the Depositor to the Trust – is baseless and Defendant's motion for summary judgment must be denied.

13

**B. Defendant is Not Entitled to Reformation of the MLPA and PSA Because It Has Failed to Provide Any Evidence, Let Alone Uncontroverted Evidence, of a Mutual Mistake or Scrivener's Error**

As a fallback argument, Defendant contends that even if the Mortgage Loan Schedule did not mention the Undisclosed Seconds (and it did not, as discussed above), the MLPA and PSA[9] should be reformed due to a "mutual mistake" or "scrivener's error." However, as is abundantly clear from even the case law <u>cited by Defendant</u>, this argument fails because proof of a prior agreement and meeting of the minds is a necessary predicate to any mutuality of mistake or scrivener's error, and Defendant provides no such evidence.

> 1. <u>Reformation of Contract Requires a "Mutual Mistake" Which is Contrary to a Prior Agreement</u>

A contract may be reformed "[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of <u>both</u> parties as to the contents or effect of the writing…." Restatement (Second) of Contracts § 155 (emphasis added). "A 'mutual mistake' occurs when both . . . parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent. A 'unilateral mistake' occurs when only one of the parties to a bilateral transaction is in error. To reform a contract, mutual mistake must be established by clear and convincing evidence. Unilateral mistake alone will not justify reformation of an instrument." *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) (internal citations omitted). Unilateral mistake will only support reformation if the mistake by one party is "coupled with fraud or inequitable conduct" of the other party. *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 671 (2d Cir. 1983); *see also Carb v. Lincoln Benefit Life Co.*, 09 Civ. 2980, 2009 U.S. Dist. LEXIS 87647, at *15 (S.D.N.Y. Sept. 22, 2009) ("[R]eformation can be granted only in two

---

[9]    A copy of the Mortgage Loan Schedule is attached to the PSA as Exhibit B which is identical to the Mortgage Loan Schedule attached as Exhibit A to the MLPA.

circumstances: where there has been a (i) mutual mistake; or (ii) unilateral mistake coupled with fraudulent concealment by the knowing party.").

In *Travelers Indemnity Co. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482 (S.D.N.Y. 2004), the court dismissed a claim for reformation of an insurance policy based on mutual mistake. Even though Travelers alleged that both parties "mistakenly believed" that the insurance policy would give effect to an earlier proposal, the court ruled that Traveler's allegations failed to demonstrate how CDL shared in the mistaken belief and, moreover, the allegations indicated that the misunderstanding was a unilateral mistake on the part of Travelers. *Id*. at 496-97; *see also Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002) (declining to reform the term "Monet" in a settlement agreement to pertain to one particular defendant due to insufficient evidence that this was the intention of all parties to the agreement).

Under New York law, there is a presumption against reformation, which can only be overcome with "clear, positive and convincing evidence." *Khezrie v. Greenberg*, 53 F. App'x 592, 593 (2d Cir. 2002). There is a "heavy presumption that a deliberately prepared and executed [agreement] manifests the true intentions of the parties, especially between counselled businessmen." *Healy*, 981 F. 2d at 73 (internal citations omitted; alteration in original). Also, in order to reform a contract due to mutual mistake, "the mutual mistake must be material, i.e., it must involve a fundamental assumption of the contract. Proof of <u>the variance between the meeting of the minds and its expression in the writing</u> must be clear." *Weir v. Guardian Life Ins. Co. of Am.*, 351 F. App'x 492, 493 (2d Cir. 2009) (emphasis added; internal citations omitted). The party seeking reformation must "show in no uncertain terms, not only that mistake … exists, <u>but exactly what was really agreed upon between the parties</u>." *Loewenson v. London Mkt. Cos.*, 351 F.3d 58, 61 (2d Cir. 2003) (emphasis added; internal quotation omitted).

Reformation is also appropriate based on a scrivener's error, but again, there must first be clear and convincing evidence that the parties reached a different agreement and that there was a mutual mistake. *See Nash v. Kornblum*, 12 N.Y.2d 42, 47 (1962) ("Where there is no mistake about the agreement and the only mistake alleged is in the reduction of the agreement to writing, such mistake of the scrivener … may be corrected.") (emphasis added).

### 2. Defendant Has Failed To Provide Evidence of Anything More Than At Most a Unilateral Mistake

Defendant's motion for summary judgment seeking reformation of the MLPA and PSA fails under the above-cited authority because it has not presented any evidence of a meeting of the minds between the parties that is the necessary predicate for a mutual mistake. The vast majority of "facts" presented by Defendant on this issue pertain to actions of Defendant, MS Capital I (Defendant's proxy as Depositor), and third parties such as Deloitte which were jointly retained by Defendant and MS Capital I. *See* Def.'s 56.1 Stmt. ¶¶ 4, 5, 7 – 10, 15, 16, 19, 23, 34, 37, and 40.

As an initial matter, these purported facts cannot be deemed uncontroverted because they are based entirely on the declaration of Defendant's representative, Mr. McClernan. Plaintiff has not been afforded the opportunity to depose this individual or conduct any discovery. *See* Section II.A above. However, rather than defer this Motion until after discovery can be conducted, the Court should simply deny the Motion because even if these purported facts were accepted as true, they provide no evidence that Plaintiff had a meeting of the minds with Defendant as to what should or should not be disclosed in the Mortgage Loan Schedule.[10] Without a meeting of

---

[10]     As explained in Section II.A above, MS Capital I was the nominal Depositor necessary to this CMBS transaction, and as such, worked hand-in-hand with Defendant in creating the securitization, so its knowledge and actions cannot be imputed upon the Trustee or Certificateholders.

the minds between the parties as to what information to include in the Mortgage Loan Schedule, there can be no "mutual mistake." At most, they indicate a unilateral mistake by Defendant.

Defendant asserts just one purported fact that "[t]he parties negotiated the terms of, and then executed, the MLPA and PSA, all the while being fully aware of, and taking into account, the Second Loans that Santander disclosed." (Def.'s 56.1 Stmt. ¶ 52). This is completely baseless. Defendant's sole "evidence" for this purported "fact" is to rely once again upon Mr. McClernan's Declaration – which is utterly devoid of any underlying factual support such as references to e-mails, memos, correspondence, communications, any specific persons that were allegedly involved, or specific meetings or events that transpired. In fact, the Plaintiff Trust was not even created until the Closing Date (June 21, 2007), and Trustees generally do not have significant or substantive involvement in negotiating and drafting MLPAs and PSAs. The substantive work on those documents is usually performed by the Mortgage Loan Seller, Special Servicer and proposed Controlling Class Certificateholder. Defendant, not Plaintiff, served in all three of these initial roles. (Owen Decl. ¶¶ 5-6). Further, Defendant's purported evidence should be discounted because Plaintiff has not been afforded the opportunity to depose Mr. McClernan or conduct discovery in this area, or any other. (Pltf's Response to 56.1 Stmt. ¶ 52).[11]

Even under ordinary circumstances, Defendant would have to clear a high threshold to overcome the presumption against reformation, which can only be overcome with "clear, positive and convincing evidence." *Khezrie*, 53 F. App'x at 593. But this threshold is even higher

---

[11] Defendant does not even specify who the "parties" are that engaged in the mutual mistake or when they agreed that the representations and warranties would recite something other than what they actually recite. As explained in the caption, Plaintiff is the Trust, acting by and through sub-special servicer Waterstone Asset Management, LLC. The Certificateholders are the beneficiaries of the Trust. Neither the Trust nor the Certificateholders existed at least until the securitization was closed. So, is it Wells Fargo, the nominal trustee, who purportedly negotiated the MLPA and PSA, or is it the Certificateholders, who are not even a party to the action? Defendant does not explain who joined Defendant in its purportedly mutual mistake.

in a CMBS case such as this where the contracts were carefully negotiated by sophisticated businesses with the assistance of legal counsel. *See Healy*, 981 F. 2d at 73 ("there is a heavy presumption that a deliberately prepared and executed [agreement] manifests the true intentions of the parties, especially between counselled businessmen"). Accordingly, in *Travelers Indemnity,* the court granted a motion to dismiss the reformation claim despite the fact that Travelers alleged that both parties shared in the mistake, because Travelers did not allege any viable support for the claim. 322 F. Supp. 2d at 496-97. As demonstrated above, Defendant has not only failed to clear the bar – it never gets off the ground.

Thus, Defendant has failed to provide any evidence of a mutual mistake or scrivener's error and, at most, has provided evidence of a unilateral mistake on its part, and its motion for summary judgment reforming the MLPA and PSA should be denied.

### C. Plaintiff Has Not Waived Its Right To Enforce Rep 18 Because It Had No Knowledge of the Undisclosed Seconds, and Even If It Did, the MLPA Expressly Provides That Any Such Knowledge is Irrelevant.

Defendant argues that, because it purportedly disclosed the Undisclosed Seconds in documents other than the MLPA, Plaintiff has waived its right to seek a remedy for Defendant's admitted breach of its representations and warranties. This purported waiver defense fails as a matter of law because even if Plaintiff had knowledge of the Undisclosed Seconds (and Defendant has provided no such evidence, as discussed above), any such knowledge is irrelevant to a warranty claim and, further, was expressly disclaimed in the MLPA in the "no due diligence" provision. Despite this, Defendant claims that its purported disclosure of the Undisclosed Seconds in the Preliminary Transaction Documents somehow confers knowledge of the Undisclosed Seconds on Plaintiff and that the no due diligence provision is somehow inapplicable. These arguments must be rejected for at least four reasons.

First, the law of express warranties plainly establishes that Plaintiff's knowledge, if any, is immaterial. Because a warranty, as described by Judge Learned Hand, is "an assurance by one party to a contract of the existence of a fact upon which the other party may rely," *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1964), Plaintiff is entitled to rely on the truth of the matter warranted in Rep 18 – namely that there were no Undisclosed Seconds. The very purpose of a warranty – like Rep 18 – is "to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Id.* Indeed, "a buyer may enforce an express agreement even if it had reason to know that the warranted facts are untrue." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007). Plaintiff's knowledge is, therefore, irrelevant to Defendant's breach and, moreover, provides no defense.

Second, the MLPA's "no due diligence" provision expressly disclaims and renders irrelevant any knowledge of Plaintiff. Critically, the MLPA's "no due diligence" provision provides that:

> Neither the delivery by Seller of the Mortgage Files, Servicing Files of any other document required to be delivered under Section 2.01 of the [PSA], nor the review thereof **or any other due diligence by the Trustee, any Master Servicer, the Special Servicer, a Certificate Owner or any other person** shall relieve [Defendant] of any liability or obligation with respect to any representation or warranty or otherwise under this Agreement or constitute notice to any Person of a Breach or Defect.

MLPA § 6.3 (emphasis added). This provision clearly disclaims any obligation of Plaintiff to review any of the thousands of pages of loan files, marketing materials, offering memoranda, and other documents associated with the CMBS transaction at issue here, including the Preliminary Transaction Documents upon which Defendant relies to demonstrate Plaintiff's purported knowledge of the Undisclosed Seconds.

Third, even assuming, *arguendo*, that Plaintiff's knowledge is relevant (which it is not), Defendant has not demonstrated that Plaintiff actually had any knowledge of the Undisclosed Seconds (other than to claim – without factual or legal support – that knowledge of the Undisclosed Seconds was imputed from the Depositor). *See* Section II.B.2 above. There can be no real dispute that Defendant failed to disclose the Undisclosed Seconds in the two governing agreements – the MLPA and PSA – under which Defendant was contractually obligated to make such disclosures. *See* Section II.A. above. Furthermore, as illustrated by the McClernan Declaration, Defendant appears to acknowledge that Plaintiff was not involved in the negotiations of the Preliminary Transaction Documents. (*See, e.g.*, McClernan Decl., ¶¶ 8, 18, 20, and 21). Similarly, there is no indication in the record that Plaintiff ever received, much less reviewed, the Preliminary Transaction Documents prior to the transfer of the Loans.[12] Thus, it cannot plausibly be maintained that Plaintiff had any knowledge of the Undisclosed Seconds from these documents. At most, Plaintiff's knowledge, to the extent that it is relevant, presents a question of fact that must be resolved through discovery. For this reason alone, summary judgment is both premature and inappropriate, but Plaintiff's knowledge is <u>not</u> relevant as discussed above.

Finally, even assuming, *arguendo,* that Plaintiff had knowledge of the Undisclosed Seconds, the "no due diligence" provision functions as the express preservation of rights that

---

[12]    Indeed, the Trust, which is the owner and holder of the loans, and Plaintiff in this matter, did not even exist when these documents were created. As is typical with CMBS transactions, the Trust was created as of the Closing Date of the MLPA and PSA. Accordingly, the Preliminary Transaction Documents predated the Trust's existence. This is among the reasons why it is wholly impractical to conduct due diligence on the assets and why the transfer of the loans to the Trust is, instead, predicated on true and correct representations and warranties and the "no due diligence" provision in the MLPA.

Defendant claims is necessary for Plaintiff to preserve its rights under the Representations and Warranties.

Defendant points out that the Second Circuit has held that a buyer may waive a warranty where it "closes on a contract in full knowledge and acceptance of the facts disclosed by the seller would constitute a breach of warranty under the terms of the contract." *Galli v. Metz*, 973 F.2d 145, 151 (2d Cir. 2001). Setting aside that one of the two parties here – the Trust –did not actually exist until the securitization, this exception does not apply where the buyer – like the Trust here – makes an express reservation of its rights under the warranties (such as in a "no due diligence" provision). *Id.*; *Rogarth v. Siebenmann*, 129 F.3d 261, 264-65 (2d Cir. 1997).

Indeed, construing a very similar "no due diligence" provision in a CMBS case, another court in this District has concluded:

> The Trustee is correct that it had no obligation to perform due diligence prior to securitization. Furthermore, if the Trustee did perform due diligence on the contents of the "credit files, underwriting documentation, or Mortgage Files" (the "Mortgage Files"), it makes no difference; the "no due diligence" clause applies whether the Trustee '*has conducted* or has failed to conduct' due diligence on the files. Under New York law, the Trustee expressly preserved its rights under the warranties with respect to any information it actually discovered or it could have discovered in those files.

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Corp.*, No. 11 Civ. 0505, 2013 U.S. Dist. LEXIS 87863, at *66 (S.D.N.Y. June 19, 2013) (emphasis in original) (citing *Galli*, 973 F.2d at 151 and *Rogarth*, 129 F.3d at 264-65).

Unable to provide any reasoning or authority to avoid the clear consequences of the "no due diligence" provision, Defendant resorts to hyperbole, characterizing as "absurd" the idea that Plaintiff's (hypothetical) review of the Preliminary Transaction Documents would constitute "due diligence" within the meaning of the provision. But MLPA § 6.3 is quite clear: Plaintiff's conducting, or failure to conduct, "any other due diligence" (including reviewing the Preliminary

Transaction Documents) "does not relieve [Defendant] of any liability or obligation with respect to any representation or warranty or otherwise" under the MLPA. There can be no real question that any review of the documents that Defendant itself describes as "key" would qualify as due diligence. Indeed, Defendant appears to concede that the review of the COM would constitute due diligence. *See* Def.'s 56.1 Stmt. ¶ 18 ("The COM is one of the key documents in the securitization process, as it, among other things, includes the loan-level information necessary to enable <u>a prospective investor to evaluate the investment in the certificates being offered for sale</u>.") (emphasis added); *cf. Black's Law Dictionary* 208 (3d ed. 2006) (defining due diligence as the "diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation" and, in the corporations and securities context as "[a] prospective buyer's . . . investigation and analysis of . . . a piece of property, or a newly issued security"). The "no due diligence" provision plainly defeats Defendant's waiver defense. Accordingly, Defendant's motion for summary judgment should be denied.

## III.    The Five Loan Action Is Not Time-Barred

Defendant claims that the Five Loan Action – which was filed on June 20, 2013 – should be dismissed as untimely under the six-year statute of limitations because "the MLPA and PSA are dated 'as of' June 8, 207 and June 1, 2007, respectively … and any claims for breach of those representations and warranties accrued on that date." Motion, p. 13. Defendant never explains whether June 1 or June 8 is the operative date. Regardless, neither is the pertinent date for accrual of Plaintiff's claims as a matter of fact and law.

First, as matter of fact, the MLPA is quite clear: "Seller … <u>makes</u> the representations and warranties as to the Mortgage Loans set forth in Exhibit B [including Reps 10 and 18] <u>as of the Closing Date</u>." MLPA § 6.3 (emphasis added). As Defendant admits, the Closing Date was June

21, 2007 (Def.'s 56.1 Stmt. ¶ 26), not June 1 or 8, 2007 as Sovereign alleges. In addition, the entire securitization was effectuated as of the Closing Date. MLPA § 1.

Second, as a matter of law, the measuring date is not when the Reps were deemed made, but when Defendant refused to repurchase the loans in 2013. *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 12 Civ. 9412, 2013 U.S. Dist. LEXIS 80544, at *13-14 (S.D.N.Y. June 6, 2013); *ACE Sec. Corp. v. DB Structured Products, Inc.*, 965 N.Y.S.2d 844, 848 (Sup. Ct. N.Y. Cnty. 2013). Indeed, Defendant concedes that these recent CMBS and RMBS cases hold that statutes of limitation for repurchase claims do not begin to run until after plaintiff has the ability to demand repurchase of the loan or the defendant has refused to repurchase. *See* Def.'s Mem. at 15 n.11.  Under that case law, the statute in the Five Loan Action did not start to run until June of 2013.

However, even assuming *arguendo* that the statue started to run earlier, the filing was still timely. Under well-settled New York law, a statute of limitations cannot commence to run until a breach occurs. *T & N PLC v. Fred S. James & Co.*, 29 F.3d 57, 59 (2d Cir. 1994); *U.S. Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 80544, at *10. In this case, the breach could only occur, at the earliest, when the Reps were first made and conveyed to the Certificateholders; on the Closing Date. Fundamentally, a party cannot be deemed to be in breach of representations and warranties it has not yet made.

In *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*, 237 F. Supp. 2d 618 (D. Md. 2002), the court, applying New York law and discussing application of the statute of limitations, held that "[i]t is undisputed that the warranties at issue were all made by Lehman on November 25, 1997, which was the date of the MLPA closing." *Id*. at 634 (emphasis added). This is because

the loans were "securitized" on the closing date, despite the MLPA being executed on November 1, 1997. *Id*. at 622.[13]

Significantly, Judge Forrest of this District dealt with this <u>identical issue</u> only two months ago. In *Bank of NY Mellon v. WMC Mortg.*, Case No. 12 Civ. 7096 (S.D.N.Y. Sept. 12, 2013), the Court rejected defendant's argument that the statute of limitations for a breach of warranty claim in a mortgage-backed securities case begins running on the effective date of the MLPA, as opposed to the securitization closing date. Snyder Decl. Ex. 3 at 5. Judge Forrest reasoned that the statute of limitations could not start running from the effective date because the mortgage loan seller has the ability to change the loans that are included in the trust up to and including the closing date. *Id.* In other words, it cannot be determined until the closing date what is being represented and warranted to in the MLPA, which is why the closing date is the date from which the statute of limitations begins to run. *Id.* The Court noted that if the effective date was deemed to be the accrual date, it would lead to the "oddity" that even though a claimant could not bring a claim until the closing date, the statute of limitations would start running before then. *Id.* at 5-6.[14]

Defendant's citations to *Lana & Edward's Realty Corp. v. Kaltz/Weinstein P'ship*, 2010 N.Y. Misc. LEXIS 548 (Sup. Ct., Kings Cnty. Mar. 17, 2010) and *Structured Mortgage Trust 1997-2 v. Daiwa Finance Corp.*, 02 Civ. 3232, 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003) for purported contrary authority are both easily distinguishable. *Lana*, while not a CMBS case, actually reinforces Plaintiff's position because the court held there that even though the

---

[13]     *See also Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 331 (S.D.N.Y. 2012) (characterizing plaintiff's claims as requiring the defendant to "repurchase loans at the time its representations and warranties were breached (i.e. at the time of the closing of the Transaction)").

[14]     In light of the Court's conclusion that the actions were timely under this analysis, the Court did not reach the issue of whether the statute of limitation accrues when the written repurchase demand is refused. Snyder Decl. Ex. 3 at 6.

contract provided that warranties "shall be true and correct at [c]losing", the statute of limitations commenced when the warranties were "<u>made</u>." 2010 N.Y. Misc. LEXIS 548, at *10 (emphasis added). Here, the MLPA expressly provides that the representations and warranties were <u>made</u> as of the Closing Date (June 21, 2007). MLPA § 6.3.

*Daiwa* concerned an action that was commenced 8 years after the creation of the trust. Because it was commenced so far beyond the 6 year statute of limitations, the court did not analyze the exact start date of the statute of limitations, referring only generally to "the March 1996 Pooling Agreement." 2003 U.S. Dist. LEXIS 2677, at *5. *Daiwa* does not hold that the date of the PSA controls over the Closing Date.

Here, the Closing Date is June 21, 2007, pursuant to both the MLPA and PSA. The Five Loan Action was commenced on June 20, 2013 – within the statute of limitations by any measure. Therefore, Defendant's motion to dismiss the Five Loan Action as time-barred should be denied.

**IV.   Defendant's Other Grounds For Moving to Dismiss the Five Loan Action Are Moot Due to Plaintiff's Filing of an Amended Complaint**

The remainder of Defendant's Motion pertains to Defendant's argument that the Five Loan Action's Rep 10 allegations, and Rep 18 allegations concerning the Marina Palms Loan (or "Bradenton Mezzanine Debt" in the Motion), are inadequately plead and should be dismissed. Motion, pp. 15-19. However, these arguments are rendered moot by Plaintiff's recently filed Amended Complaint (Doc. 17 in the Five Loan Action) pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. The Amended Complaint includes significant additional factual support for Plaintiff's Rep 10 claims, and Plaintiff is no longer asserting a Rep 18 claim regarding the Marina Palms Loan. Therefore, Plaintiff will not further address these arguments herein. *See, e.g.*, *TradeWinds Airlines, Inc. v. Soros*, 08 Civ. 5901, 2012 U.S. Dist. LEXIS

39459, at *19 (S.D.N.Y. Mar. 22, 2012) ("[I]n view of the filing of TradeWinds' Second Amended Complaint, Defendants' motion to dismiss the First Amended Complaint is denied as moot.").

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and/or for Judgment on the Pleadings and/or for Summary Judgment (the "Motion") in its entirety.


Dated: New York, New York
       November 15, 2013

                                    Duval & Stachenfeld LLP
                                    Attorneys for Plaintiff

                         By:        _____
                                    Timothy J. Pastore, Esq.
                                    555 Madison Ave., 6th Floor
                                    New York, New York 10022
                                    Telephone:  (212) 883-1700
                                    Facsimile:  (212) 883-8883
                                    Email: tpastore@dsllp.com


**Of Counsel to Plaintiff**

Paul D. Snyder, Esq.
Bradley C. Mirakian, Esq.
Snyder Law Firm LLC
13401 Mission Road, Suite 207
Leawood, Kansas 66209
Telephone: (913) 685-3900
Facsimile: (913) 440-0724
Email: psnyder@snyderlawfirmllc.com
       bmirakian@snyderlawfirmllc.com